# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

GENE MORRIS, Individually and on
Behalf of All Others Similarly Situated,

              Plaintiffs,

        v.

SMITH MICRO SOFTWARE, INC.,
WILLIAM W. SMITH, JR., and
ANDREW C. SCHMIDT,

              Defendants.

_____

CASE NO. SACV 11-976 AG (ANx)

**ORDER GRANTING MOTION TO DISMISS**

Lead Plaintiffs Waterford Township Police & Fire Retirement Systems and Joseph Sedita (together, "Plaintiffs") bring this securities fraud class action against Defendants Smith Micro Software, Inc. ("Smith Micro" or "SM"), William W. Smith, Jr., Smith Micro's Chairman and Chief Executive Officer, and Andrew C. Schmidt, Smith Micro's Vice President and Chief Financial Officer (together, "Defendants"). Before the Court is Defendants' Motion to Dismiss Plaintiffs' Consolidated Amended Complaint ("CAC"). After reviewing the arguments and papers submitted, the Court GRANTS the Motion.

## BACKGROUND

The following facts are taken from Plaintiffs' CAC, and as it must for purposes of this Motion, the Court assumes them to be true.

Smith Micro is a publicly-traded corporation that makes internet connectivity software, among other things. (CAC ¶ 24.) Plaintiffs were investors in Smith Micro who claim that misrepresentations by Defendants about Smith Micro's financial condition – made between November 3, 2010 to March 4, 2011 (the "Class Period") – led to the artificial inflation and subsequent decline of Smith Micro's stock. (CAC ¶¶ 24-28.)

A brief description of Smith Micro's software frames the following analysis. Three primary components make it possible to access the internet from a mobile device: (1) hardware; (2) a cellular network; and (3) software connecting the hardware to the cellular network. (CAC ¶¶ 26-27.) Smith Micro makes and sells this "connection management" software. QuickLink Mobile ("QuickLink") is Smith Micro's flagship connection management software product.

In the years before the Class Period, Smith Micro enjoyed consistent growth and a large share of the connection management software market. (CAC ¶¶ 24-30.) Plaintiffs allege that in 2010 the wireless communications industry began to transition from third generation ("3G") to fourth generation ("4G") devices. According to Plaintiffs, "Defendants portrayed Smith Micro as being well positioned for the transition to 4G." (CAC ¶ 32.) Indeed, in January 2011, Smith Micro issued revenue guidance projecting $150-$160 million in sales for 2011, a 23% growth over 2010 sales.

But "in reality," say Plaintiffs, "Defendants had done very little to prepare for th[is] evolution." (CAC ¶ 32.) And in February 2011, Smith Micro revised downward its 2011 revenue projections.

The thrust of the CAC is that Defendants' initial, optimistic 2011 projections were intentionally misleading because Defendants knew that Smith Micro was not well positioned for the imminent 4G transition. Plaintiffs specifically allege that Defendants knew that sales of

QuickLink would decrease because the software would not be included in the 4G devices made by its largest customer, Verizon Wireless ("Verizon").  (SAC ¶¶ 7, 9(d), 71, 77.)

Plaintiffs allege that Defendants continued to mislead the market when they claimed in February 2011 that the downward revenue revisions were due to a one-time "hiccup" caused by inventory backlog at a key customer, and by refusing to admit that this customer was Verizon. (CAC ¶¶ 54.)  Plaintiffs allege that the "truth emerge[d]" On May 4, 2011 – the last day of the Class Period – when Defendants issued a press release acknowledging that its first quarter 2011 financial results were worse than expected, and that sales of its connection management software failed to meet expectations.  (CAC ¶¶ 70-71.)

Based on these allegations and others, Plaintiffs assert claims against Defendants under §§ 10(b) and 20(a) and Rule 10-5 of the Securities and Exchange Act of 1934 ("Exchange Act").

**PRELIMINARY MATTERS**

To support its Motion, Defendants request that the Court take judicial notice of following 25 documents, listed alphabetically by exhibit letter: (A) a February 24, 2011 SM conference call transcript; (B) a compilation of third-party analyst reports; (D) SM's 2010 Securities and Exchange Commission ("SEC") Form 10-K; (E) a January 11, 2011 SM press release; (F) SM's 2009 SEC Form 10-K; (G) a February 9, 2011 SM conference call transcript; (H) a February 8, 2011 SM press release; (I) various third-party press releases; (J) a March 14, 2011 SM presentation transcript; (K) a February 24, 2011 SM press release; (L) a May 4, 2011 SM press release; (M) a May 4, 2011 SM conference call transcript; (N) an August 2, 2011 SM conference call transcript; (O) a January 11, 2011 SM presentation transcript; (P) a November 3, 2010 SM conference call transcript; (Q) a January 6, 2011 SM press release; (R) a January 11, 2011 SM presentation transcript; (S) a SM SEC Form 4s concerning Smith; (T) SM's SEC Form 4 concerning Schmidt; (U) SM's 2010 SEC Form DEF 14A; (V) SM's 2011 SEC Form DEF 14A; (Z) a November 3, 2010 SM press release; (AA) SM's 3Q2010 SEC Form 10-Q; (AB) a

November 16, 2010 SM presentation transcript; and (AC) a December 6, 2010 SM press release. (Defendants do not request judicial notice of exhibits C, W, X, or Y.)

Alternatively, Defendants request that the Court consider, under the incorporation by reference doctrine, those documents referenced in, but not attached to, Plaintiffs' CAC. Plaintiffs oppose Defendants' requests.

When faced with a large amount of extrinsic evidence, some courts will take it upon themselves to convert a motion to dismiss into a summary judgment motion. But this Court does not believe the exception should become the rule. Even if there is proper notice, conversion raises more issues than it solves. It is unfair to convert an argument over the pleadings into one over the facts when that was not the original intent of the filings. The risk of prejudice and general confusion is simply too great. Conversion is particularly troublesome in the Central District of California, which has additional requirements for summary judgment motions that do not apply to motions to dismiss. *See* Local Rule 56 (requiring a "Statement of Uncontroverted Facts" and a "Statement of Genuine Disputes of Material Fact").

Under Federal Rule of Evidence 201, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Courts may take judicial notice of "*undisputed* matters of public record," but generally may not take judicial notice of "*disputed* facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (emphasis in original). Facts subject to judicial notice may be considered on a motion to dismiss. *Mullis v. U.S. Bankr. Ct.*, 828 F.2d1385, 1388 (9th Cir. 1987).

Although often conflated, the doctrine of incorporation by reference is distinct from judicial notice. "That doctrine permits a district court to consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleadings.'" *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (quoting *Branch v. Tunnell*, 13 F.3d 449, 454 (9th Cir. 1994)).

Plaintiffs' CAC references or quotes the contents of Exhibits A, D, E, G, H, J-R, and portions of Exhibit B, and Plaintiffs do not appear to question the authenticity of these documents. (*See, e.g.*, CAC ¶¶ 35, 37, 40-41, 43, 45, 48, 50, 52, 54, 56, 59, 61, 63, 64, 66, 68, 70-71, 76-77). Thus, the Court may consider their contents under the incorporation by reference doctrine even though they fail to satisfy Rule 201's requirements for judicial notice. *See Silicon Graphics*, 183 F.3d at 986. The Court declines to consider those portions of Exhibit B that are not referenced in the CAC. The Court also declines to consider Exhibit I because it is not referenced in or attached to the CAC.

Exhibits Z, AA, AB, and AC are not referenced in Defendants' Motion or Reply. The Court therefore denies as moot Defendants' request for judicial notice of these exhibits.

Exhibits D, F, S, T, U, and V are SEC filings. Exhibits S and T, which Defendants cite extensively in their Motion, are SEC Form 4s purportedly listing the sales of Smith Micro stock by Smith and Schmidt (together, "Individual Defendants"). Courts in this Circuit disagree on the appropriateness of taking judicial notice of the truth of the content of SEC filings, including Form 4s. *See generally Maimon v. Talbott*, 2010 U.S. Dist. LEXIS 142712, *18-21 (Aug. 9, 2010) (collecting cases). *Compare Patel v. Parnes*, 253 F.R.D. 531, 546 (C.D. Cal. 2008) ("It is appropriate for the court to take judicial notice of the content of the SEC Forms 4 and the fact that they were filed with the agency. *The truth of the content, and the inferences properly drawn from them, however, is not a proper subject of judicial notice . . . .*") (emphasis added); *In re Adaptive Broadband Sec. Litig.*, 2002 U.S. Dist. LEXIS 5887, at *60-63 (N.D. Cal. Apr. 2, 2002) (declining to take judicial notice of Form 4s) *with In re Intrabiotics Pharms., Inc. Secs. Litig.*, 2006 U.S. Dist. LEXIS 15753, at *39 (N.D. Cal. Jan. 23, 2006) (courts may take judicial notice of "documents . . . which indicate that [securities fraud defendants] purchased" their company's stock, and such purchases may undermine an inference of scienter); *Allison v. Brooktree Corp.*, 999 F. Supp. 1342, 1352, n.3 (S.D. Cal. 1998) (taking judicial notice of defendant's "Form 4 wherein he reported [stock] purchases to the SEC").

This Court joins those that decline to judicially notice the truth of the contents of SEC filings, including the dates and volume of stock purchases listed in SEC Form 4s. While it may

be appropriate to judicially notice the existence of SEC filings and their contents, judicial notice should not be taken of the *truth of their contents*. *See Patel*, 253 F.R.D. at 546.

## **LEGAL STANDARD**

A court should dismiss a complaint when its allegations fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "'[D]etailed factual allegations' are not required." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). The Court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff. *Pollard v. Geo Group, Inc.*, 607 F.3d 583, 585 n.3 (9th Cir. 2010).

But the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1940 (citing *Twombly*, 550 U.S. at 556). A court should not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1940. "[T]o be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The complaint must also "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

Fraud claims must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires enough specificity to give a defendant notice of the particular misconduct to be able to defend against the charge. *Bly-Magee v. California*, 236 F.3d 1014,

1019 (9th Cir. 2001) (internal citations omitted).  To satisfy this specificity requirement, "the who, what, when, where, and how" of the misconduct must be alleged.  *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir. 1997).  Thus, factual allegations must include "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

Beyond Rule 8(a)(2) and 9(b), the Private Securities Litigation Reform Act of 1995 ("PSLRA") imposes heightened pleading requirements.  These requirements are discussed in the Court's analysis.

**ANALYSIS**

**1.      PLAINTIFFS' FIRST CLAIM, FOR VIOLATION OF SECTION 10(b) AND RULE 10b-5 OF THE EXCHANGE ACT**

Defendants argue that the Court should dismiss Plaintiffs' claim for violation of § 10(b) and Rule 10b-5 of the Exchange Act.  The Court agrees.

To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss." *In re Daou Sys. Inc.*, 411 F.3d 1006, 1014 (9th Cir. 2005) (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)).  Defendants argue that Plaintiffs' § 10(b) and Rule 10b-5 claim fails because Plaintiffs do not sufficiently allege scienter, a material misrepresentation or omission of fact, or loss causation.  The Court addresses Plaintiffs' scienter allegations first.

**1.1     Scienter**

Under the PSLRA, a securities fraud complaint "must raise a 'strong inference' of scienter – i.e., a strong inference that the defendant acted with an intent to deceive, manipulate,

7

or defraud." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (quoting 15 U.S.C. § 78u-4(b)(2)); *see also Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1324 (2011) (To plead scienter under the PSLRA, "a plaintiff must 'state *with particularity* facts giving rise to a *strong inference* that the defendant acted with the required state of mind.'") (quoting 15 U.S.C. § 78u-4(b)(2)(A)) (emphasis added).

"[I]n determining whether the pleaded facts give rise to a 'strong' inference of scienter, 'the court must take into account plausible opposing inferences,' including inferences unfavorable to the plaintiffs." *Metzler*, 540 F.3d at 1061 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 310 (2007)). "A complaint adequately pleads scienter under the PSLRA 'only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Matrixx*, 131 S. Ct. at 1324 (quoting *Tellabs*, 551 U.S. at 324).

In pleading scienter, a securities fraud plaintiff "must 'allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness.'" *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1180 (9th Cir. 2009), *aff'd sub nom Matrixx Initatives, Inc. v. Siracusano*, 131 S. Ct. 1309 (2011) (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009)); *see also Matrixx*, 131 S. Ct. at 1312-13 ("This Court assumes, without deciding, that the scienter requirement may be satisfied by a showing of deliberate recklessness."). Reckless conduct satisfies the scienter standard "to the extent it reflects some degree of intentional or conscious misconduct." *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 782 (9th Cir. 2008) (quoting *Silicon Graphics*, 183 F.3d at 977). In the scienter context, the Ninth Circuit defines recklessness as

> a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.

*Siracusano*, 585 F.3d at 1180 (quoting *Silicon Graphics*, 183 F.3d at 976).

On a motion to dismiss, courts "must first 'determine whether any of the plaintiff's allegations, standing alone, are sufficient to create a strong inference of scienter.'" *Siracusano*, 585 F.3d at 1180 (quoting *Zucco*, 552 F.3d at 992). If they do not, the court then conducts a holistic review of the complaint's allegations "to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness." *Id.* (quoting *Zucco*, 552 F.3d at 992); *accord Matrixx,* 131 S. Ct. at 1324 ("In making this determination, the court must review 'all the allegations holistically.'") (quoting *Tellabs*, 551 U.S. at 326).

Plaintiffs' allegations of scienter are based primarily on (1) Defendants' purported knowledge that Verizon's 4G devices would not include Smith Micro's connection management software, (2) the Individual Defendants' stock sales during the Class Period, and (3) the Individual Defendants' compensation packages.

### 1.1.1 Whether Allegations Concerning Defendants' Purported Knowledge that Verizon's 4G Devices Would not Include QuickLink Are Sufficient to Establish Scienter

Plaintiffs argue that scienter is adequately pled because "Defendants knew based on regular discussions with Verizon that QuickLink would not be utilized on Verizon's 4G devices." (Opp'n at 2:3-4 (citing CAC ¶¶ 27, 30, 66, 68).) But Plaintiffs do not provide particularized allegations that the Individual Defendants engaged in these discussions or that the Individual Defendants were told by specific subordinates that QuickLink would not be used in Verizon's 4G devices. Instead, Plaintiffs rely on the "core operations inference" to impute such knowledge to Defendants. *See South Ferry*, 542 F.3d at 781.

As the Ninth Circuit explained in *South Ferry*, "[a]llegations regarding management's role in a corporate structure" and allegations concerning "the importance of the corporate information about which management made false or misleading statements" may raise an

inference of scienter "when made in conjunction with detailed and specific allegations about management's exposure to [such] information." *Id.*

Plaintiffs adequately allege, and Defendants do not dispute, that "defendants played an active role in running Smith Micro." (Opp'n at 20:11-13 (citing CAC ¶¶ 14, 18, 23, 90, 93.) Plaintiffs also adequately allege that the information Defendants purportedly misrepresented – namely, information concerning Verizon's use (or non-use) of QuickLink in 4G devices – was "crucial to Smith Micro's operations and financial condition." (Opp'n at 20:23-25.)

But these allegations are insufficient to establish the core operations inference because Plaintiffs do not provide "detailed and specific allegations about management's exposure to . . . information" concerning Verizon's non-use of QuickLink in 4G devices. *Id.* Plaintiffs allege that Defendants *must have known* this information because (1) Defendants admitted that its "customer relationships remained strong" throughout the Class Period, (Opp'n at 21:17-18 (citing CAC ¶¶ 54, 56)), (2) Defendants acknowledged "dispatch[ing] our most senior sales executives to [Verizon] to discuss what the actual issue was and gain clarity" (Opp'n at 21:23-24 (citing Motion at 23)), and (3) "[w]ith the transition to 4G looming, Smith Micro did not develop a new connection manager for 4G, but rather simply upgraded its old outdated 3G software to work on a 4G network." (CAC ¶ 91.)

In other words, Plaintiffs ask the Court to infer from the strength of Smith Micro's customer relationships, Smith Micro's decision in February 2011 to send senior sales executives to Verizon, and Smith Micro's purported unpreparedness for the industry transition to 4G that Defendants *knew* or *recklessly disregarded* that Verizon 4G devices did not require QuickLink software. This is a bridge too far.

Plaintiffs do not adequately explain how Smith Micro's "strong relationship" with Verizon put Defendants on notice that Verizon's 4G products would not include QuickLink software. Nor do Plaintiffs allege with particularity the nature of any discussions between Smith Micro and Verizon, who conducted them, or what was disclosed. In short, there are insufficient "corroborating details" in the CAC to raise a "strong inference" that Verizon told Smith Micro employees that its 4G devices did not require QuickLink software. *See South Ferry*, 542 F.3d at

782. *See In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1089 (9th Cir. 2002) (holding that "[w]ithout any corroborating facts, it is impossible to conclude that such allegations rest on more than hind-sight speculation."); *see also Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002) (granting motion to dismiss for failing to adequately plead scienter where "plaintiffs merely assert in conclusory terms that the defendants had access to internal data demonstrating a decline in sales, but did not identify any internal reports of 'sales data,' much less plead, in any detail, the contents of any such report or the purported data.")

As the Court explained in *South Ferry*,

> [w]here a complaint relies on allegations that management had an important role in the company but does not contain additional detailed allegations about the defendants' actual exposure to information, it will usually fall short of the PSLRA standard. In such cases the inference that defendants had knowledge of the relevant facts will not be much stronger, if at all, than the inference that defendants remained unaware. As a general matter, "corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter – at least absent some additional allegation of specific information conveyed to management and related to the fraud" or other allegations supporting scienter.

*South Ferry*, 542 F.3d at 785 (quoting *Metzler*, 534 F.3d at 1087). Here, Plaintiffs' allegations that Defendants knew or recklessly disregarded crucial information about Verizon's use of QuickLink on 4G devices, and Plaintiffs' allegations that Defendants withheld this information from investors, do not raise the "strong inference" of scienter necessary to state a claim under § 10(b) or Rule 10b-5. *See Matrixx*, 131 S. Ct. at 1324 (quoting 15 U.S.C. § 78u-4(b)(2)).

11

### 1.1.2  Whether Allegations Concerning Defendants' Stock Sales During the Class Period Are Sufficient to Establish Scienter

Plaintiffs next argue that the volume and timing of "Defendants' suspicious insider trading . . . support a strong inference of scienter." (Opp'n at 22:5-6.)

"Unusual or suspicious stock sales can serve as circumstantial evidence of scienter." *Alaska Elec. Pension Fund v. Adesco S.A.*, 371 F. Supp. 2d 1203, 1221 (S.D. Cal. 2005) (citing *Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001)); *see also Silicon Graphics*, 183 F.3d at 986. "But not every sale of stock by a corporate insider shows that the share price is about to decline." *Ronconi*, 253 F.3d at 435. Accordingly, "courts have repeatedly held that the mere existence of stock sales does not raise a strong inference of fraudulent intent. Plaintiffs have the burden at the pleading stage of explaining why the stock sales were unusual or suspicious." *In re PETsMART, Inc. Sec. Litig.*, 61 F. Supp. 2d 982, 1000 (D. Ariz. 1999); *Ronconi*, 253 F.3d at 435; *Silicon Graphics*, 183 F.3d at 987.

"In order for plaintiffs to rely on insider trading as circumstantial evidence of falsity, they must allege sufficient context of insider trading for [courts] to determine whether the level of trading is '*dramatically* out of line with prior trading practices.'" *Ronconi*, 234 F.3d at 436-37 (*Zucco*, 552 F.3d at 1002) (emphasis added). The Ninth Circuit has identified three relevant factors when analyzing insider sales: "(1) the amount and percentage of shares sold by insiders; (2) the timing of the sales; and (3) whether the sales were consistent with the insider's prior trading history." *Ronconi*, 253 F.3d at 435 (quoting *Silicon Graphics*, 183 F.3d at 986).

Plaintiffs claim that the Individual Defendants' alleged sales raise an inference of scienter because "*all* of the Individual Defendants' insider sales of Smith Micro's shares occurred in the short time frame between November 8 and December 10, 2010, after defendants had . . . artificially inflated Smith Micro's share price." (Opp'n at 22:14-16 (emphasis added).) Defendants claim that this allegation is simply false, and ask the Court to take judicial notice of SEC Form 4s purportedly showing that the Individual Defendants sold numerous shares of Smith Micro stock on many dates *before* the Class Period. As explained previously, the Court declines

to take judicial notice of the truth of the contents of these Form 4 filings.  Thus, for purposes of this Motion, the Court rejects Defendants' argument that Plaintiffs' allegations are untrue.

But declining to take judicial notice the truth of the contents of the Individual Defendants' Form 4s does not mean that the Court must accept Plaintiffs' conclusion that the Individual Defendants' stock sales establish an inference scienter.  Here, Plaintiffs' allegations concerning such trades fail to raise an inference of scienter in large part because Plaintiffs don't allege that these purchases were "[in]consistent with [Defendants'] prior trading history." *Ronconi*, 253 F.3d at 435.  Plaintiff's failure to plead the Individual Defendants' trading history prevents the Court from determining whether their stock sales *during the Class Period* were, as Plaintiffs' allege, "unusual in both timing and amount." (Opp'n at 22:8.)  *See id.*

The Court finds that Plaintiffs' allegations concerning the Individual Defendants' stock sales during the Class Period are insufficient to establish scienter.

### 1.1.3   Whether Allegations Concerning the Individual Defendants' Compensation Are Sufficient to Establish Scienter

Plaintiffs also argue that "Defendants' . . . performance based executive compensation plans support a strong inference of scienter." (Opp'n at 22:5-6.)  Only the following four sentences in the CAC concern the Individual Defendants' compensation plans:

> During the Class Period, Smith [and Schmidt] received an annual compensation package, which according to Smith Micro's May 9, 2011 Proxy Statement, included "base salary, cash bonus awards, long-term equity incentives in the form of stock options and restricted stock, other benefits and restricted stock vesting . . . upon termination and/or a change in control."  Other than the based [sic] salary, all other components of the compensation package were "performance-based."  As explained in the Proxy Statement, Smith [and Schmdit] and other Smith Micro executives received equity

> compensation in the form of restricted stock so that they were incentivized to "align their interests with those of [Smith Micro] shareholders." Under this structure, Smith [and Schmidt] received $2,200,051 [and $122,786] in compensation in 2010, including a cash bonus of $124,151 [and $79,909] and $1,203,000 [and $601,500] in restricted stock.

(CAC ¶¶ 15, 19 (ellipses in original).) The lone paragraph that Plaintiffs allot to this argument in their Opposition simply reiterates these allegations, supported with brief citations to two cases. (Opp'n at 23:3-22.)

These allegations do not raise any inference of scienter. As the Ninth Circuit stated in *Zucco*, "[i]f simple allegations of pecuniary motive were enough to establish scienter, 'virtually every company in the Untied States that experiences a downturn in stock price could be forced to defend securities fraud actions." *Zucco*, 552 F.3d at 1005 (9th Cir. 2009) (quoting *Litpon*, 283 F.3d at 1038). It is also difficult to reconcile Defendants' "long-term equity incentives" with a fraudulent scheme that, according to thrust of the CAC, was bound to fail.

### 1.1.4 Whether Plaintiffs' Allegations Viewed Holistically Are Sufficient to Establish Scienter

As noted, courts deciding motions to dismiss claims under § 10(b) and Rule 10b-5 "must first 'determine whether any of the plaintiff's allegations, standing alone, are sufficient to create a strong inference of scienter.'" *Siracusano*, 585 F.3d at 1180 (quoting *Zucco*, 552 F.3d at 992). None of Plaintiffs' allegations, in isolation, are sufficient to raise this inference. But the inquiry doesn't end there. The Court must also review "all the allegations holistically," *Matrixx*, 131 S. Ct. at 1324, "to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness." *Siracusano*, 585 F.3d at 1180 (quoting *Zucco*, 552 F.3d at 992). The Court finds that Plaintiffs' allegations, considered as a whole, fail to raise a "strong inference" of scienter. 15 U.S.C. § 78u-4(b)(2).

14

**1.2      Material Misstatements and Omissions and Loss Causation**

Plaintiffs devote the lion's share of their Opposition – 15 pages – to attacking Defendants' argument that they failed to adequately plead the existence of material misrepresentations and omissions.  (*See generally* Opp'n at 5-19.)  By contrast, Plaintiffs spend just five pages discussing scienter.

The Court considered Plaintiffs' arguments concerning misstatements and omissions in its analysis of scienter.  But because Plaintiffs fail to adequately plead scienter, the Court need not determine whether Plaintiffs have properly pled the other elements of a claim under § 10(b) and Rule 10b-5.  *See, e.g.*, *Curry v. Hansen Medical, Inc.*, 2011 WL 3741238, *7 (N.D. Cal. 2011) ("Because the Court concludes that Plaintiffs have not alleged scienter, it need not address the remaining claim requirements."); *see also Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*, 2011 WL 1253250, *35 (D. Ariz. Mar. 31, 2011).  ("Because the court has expressly found that at least one of the elements of plaintiff's section 10(b) claim is missing, i.e., falsity, that claim fails, and there is no need for the court to consider defendants' loss causation and scienter arguments.") (citing *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 n.1 (9th Cir. 2010)) ("If one of [the § 10(b)] elements is missing, the investors' claim fails.").

**1.3      Conclusion**

The Court finds that Plaintiffs' allegations of scienter, standing alone and viewed holistically, are insufficient to raise a "strong inference that the [Defendants] acted with the required state of mind."  *Matrixx*, 131 S. Ct. at 1324 (quoting 15 U.S.C. § 78u-4(b)(2)(A)).  Thus, Plaintiffs fail to state a claim under § 10(b) or Rule 10b-5 of the Exchange Act.

**2.      SECTION 20(a)**

Plaintiffs' § 20(a) claim is derivative of its § 10(b) and Rule 10b-5 claim.  Because this latter claim fails, so too does the former.  *See Zucco*, 552 F.3d at 990 ("Section 20(a) claims may be dismissed summarily . . . if a plaintiff fails to adequately plead a primary violation of section 10(b).").

**DISPOSITION**

Defendants' Motion is GRANTED.  Plaintiffs may file an amended pleading within 28 days of this Order.

IT IS SO ORDERED.

DATED: May 21, 2012

_____
Andrew J. Guilford
United States District Judge